UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK S. DOMINGUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>SELENE FINANCE, LP,<br><br>    Defendant. | Case No. 23-cv-06225-JSC<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 94, 95 |

Now pending before the Court are the parties' cross-motions for partial summary judgment on whether Defendant Selene Finance LP is an "assign" of the Lender within the meaning of Plaintiff Rick S. Dominguez's Deed of Trust. Having carefully considered the parties' submissions, and with the benefit of oral argument on September 4, 2025, the Court GRANTS Plaintiff's motion for partial summary judgment and DENIES Selene's. On the present record, every reasonable juror would conclude Selene is not an assign under Plaintiff's Deed of Trust.

**BACKGROUND**

**I.    FACTS**

In July 2004, Plaintiff executed an adjustable rate note for his property in Hayward, California. (Dkt. No. 94-2.)[1] In return for the loan he received, Plaintiff promised to pay $257,000 plus interest "to the order of the Lender," which was Gateway Bank, FSB. (*Id.* at 3.) Soon after, Plaintiff executed a Deed of Trust to Gateway Bank, FSB, as the Lender. (Dkt. No. 94-1 at 2.)

Subsequently, Plaintiff's Deed of Trust was assigned several times. In August 2004, Gateway Bank, FSB, as assignor, "[did] hereby grant, sell, assign, transfer and convey" to Chase

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Manhattan Bank, USA "all beneficial interest" under the Deed of Trust. (Dkt. No. 94-6; Dkt. No. 95-1 ¶ 10.) Subsequently, in March 2023, Chase Bank "[did] hereby grant, assign and transfer to Federal National Mortgage Association . . . all beneficial interest under" the Deed of Trust. (Dkt. No. 94-7.) Finally, in May 2023, Federal National Mortgage Association "[did] hereby grant, assign, and transfer to U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust . . . all beneficial interest under" the Deed of Trust. (Dkt. No. 94-8.) So, during the time period relevant to this case, Plaintiff's loan was owned by RCF 2 with U.S. Bank acting as "owner trustee."

Separately, in December 2020, Selene as "the Servicer" and RCF 2 as "the Owner" entered a Base Servicing Agreement.[2] (Dkt. No. 93-1; Dkt. No. 95-1 ¶ 5.) The Base Servicing Agreement serves as "the acknowledgment that Selene will service the loans on behalf of the manager and owner of the loan." (Dkt. No. 94-4 at 27; *see also* Dkt. No. 93-1 at 89 (form acknowledgment agreement); Dkt. No. 94-4 at 25-26 (attesting Selene "[w]as not able to locate th[e] acknowledgment agreement" involving Plaintiff's loan).) In addition, U.S. Bank—as owner trustee for RCF 2—executed a limited power of attorney "appoint[ing] Selene Finance LP ('Servicer')" to conduct enumerated tasks. (Dkt. No. 94-13 at 2.) For example, the Limited Power of Attorney permits Selene to demand and recover funds belonging to or claimed by U.S. Bank; execute and file documents to defend U.S. Bank in litigation; transact business regarding loans Selene is servicing; and execute certain agreements associated with such loans. (*Id.* at 3-4.)

In August 2022, Plaintiff received three notices stating the servicing of his mortgage had been transferred to Selene. First, in August 2022, Mr. Cooper—"a brand name of Nationstar Mortgage LLC"—sent a letter stating "[t]he servicing of your mortgage, that is, the right to collect payments from you, is being transferred from Mr. Cooper to Selene Finance LP, effective 8/30/2022." (Dkt. No. 94-9 at 2.) Later that month, U.S. Bank sent Plaintiff a letter stating "[t]he ownership of your mortgage loan has been acquired by U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust." (Dkt. No. 95-9

---

[2] Pretium Residential Credit Management, LLC, was also a party to the Base Servicing Agreement as "Manager." (Dkt. No. 95-2.)

at 3.) The letter continued: after August 30, 2022, "your new loan servicer will be Selene Finance LP," which "has authority to act on our behalf with regard to the administration of your mortgage loan and respond to any questions about your mortgage loan." (*Id.*) Third, in September 2022, Selene sent Plaintiff a letter notifying him "the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold, or transferred from Nationstar Mortgage LLC d/b/a Mr. Cooper to Selene Finance LP, effective 8/30/2022." (Dkt. No. 94-14 at 1, 5.) Each letter informed Plaintiff the transfer would not affect terms or conditions of his mortgage. (Dkt. No. 94-9 at 2 (Mr. Cooper letter); Dkt. No. 95-9 at 3 (U.S. Bank letter); Dkt. No. 94-14 at 5 (Selene letter).)

## II. PROCEDURAL HISTORY

In July 2024, Plaintiff filed the operative second amended complaint "on behalf of himself and all others similarly situated . . . to obtain redress from Selene's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans." (Dkt. No. 46 ¶ 1.) The complaint alleges "Selene sent borrowers form letters alleging that the borrowers are in default of their mortgages and that the failure to immediately make a full and complete payment of all arrearages will result in acceleration of their loan and may then be scheduled for foreclosure." (*Id.* ¶ 2.) As alleged in the complaint, these letters constitute "a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to Selene that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure." (*Id.* ¶ 9.) Plaintiff alleges such practices violate the Fair Debt Collection Practices Act and the Rosenthal Fair Debt Collection Practices Act. (*Id.* ¶ 10.)

Selene moved to dismiss on several grounds, including that Plaintiff did not allege compliance with the Deed of Trust's notice-and-cure provision. (Dkt. No. 51 at 17.) The Deed of Trust requires both the "Borrower" and "Lender" to provide the other notice and an opportunity to cure before commencing "any judicial action . . . that arises from the other party's action pursuant to" the Deed of Trust:

> Neither Borrower nor Lender may commence, join, or be joined to

> any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Dkt. No. 94-1 at 11.) While Selene is not "the Lender" in the Deed of Trust, Selene argued the notice-and-cure provision applies to it because, pursuant to Section 13 of the Deed of Trust, it is an assign of the Lender. (Dkt. No. 61 at 8.) Section 13 provides:

> The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

(Dkt. No. 94-1 at 10.)

In October 2024, the Court denied Selene's motion to dismiss. (Dkt. No. 66.) Because Selene "ha[d] not met its burden to prove it is an assign of the lender," Selene did not prove "it can enforce the notice and cure provision as a matter of law." (*Id.* at 8.) The Court permitted discovery "to determine whether Selene is an 'assign' as a matter of law within the meaning of Section 13 of Plaintiff's Deed of Trust." (Dkt. No. 77.) "Discovery and proceedings on other issues in the case [were] held in abeyance pending the resolution of the 'assign as a matter of law' question." (*Id.*)

The parties now cross-move for partial summary judgment on the "assign as a matter of law" question.

## LEGAL STANDARD

The burdens faced by opposing parties on cross motions for summary judgment "vary with the burden of proof they will face at trial." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513 (N.D. Cal. 1995). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks omitted). In that case, the moving party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* If the party produces sufficient evidence on that score, "the burden

4

1   then moves to the opposing party, who must present significant probative evidence tending to
2   support its claim or defense." *Id.* (quotation marks omitted).  If the opposing party "fails to
3   produce enough evidence to create a genuine issue of material fact, the moving party wins the
4   motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210
5   F.3d 1099, 1103 (9th Cir. 2000).  If the moving party would not bear the burden at trial, it can
6   meet its summary judgment burden by (1) "produc[ing] evidence negating an essential element of
7   the nonmoving party's case," or, (2) "after suitable discovery, . . . show[ing] that the nonmoving
8   party does not have enough evidence of an essential element of its claim or defense to carry its
9   ultimate burden of persuasion at trial." *Id.* at 1106.

10   "[W]hen simultaneous cross-motions for summary judgment on the same claim are before
11   the court, the court must consider the appropriate evidentiary material identified and submitted in
12   support of both motions, and in opposition to both motions, before ruling on each of them." *Fair*
13   *Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).  In
14   other words, the Court will consider all evidence in the record, regardless of whether a party
15   identified it in support of or in opposition to a motion.

## DISCUSSION

17   The parties cross-move for partial summary judgment on whether Selene is an "assign"
18   under the Deed of Trust.  The Deed of Trust states it "shall be governed by federal law and the law
19   of the jurisdiction in which the Property is located."  (Dkt. No. 94-1 at 10.)  The parties agree
20   California law governs the dispute in accordance with this provision.  (Dkt. No. 108 at 5; Dkt. No.
21   105 at 8).

22   **I.    THE MEANING OF "ASSIGNS"**

23   Under California law, "[t]he word assign, in the ordinary legal sense, means to transfer
24   title or ownership of property." *Com. Disc. Co. v. Cowen,* 18 Cal. 2d 610, 614 (1941); *see also*
25   *Fink v. Shemtov*, 210 Cal. App. 4th 599, 610 (2012) ("[t]o 'assign' ordinarily means to transfer
26   title or ownership of property . . . .") (quoting *California Ins. Guarantee Assn. v. Workers' Comp.*
27   *Appeals Bd.*, 203 Cal. App. 4th 1328, 1335 (2012)); *see also BNY Midwest Tr. Co. v. Nat'l Union*
28   *Fire Ins. Co. of Pittsburgh, PA*, 213 F. App'x 563, 566 (9th Cir. 2006) ("To 'assign' ordinarily

5

means to *transfer title or ownership* of property") (quoting *McCown v. Spencer*, 8 Cal. App. 3d 216, 225 (1970)).  So, an "assign"—noun—is the person or entity that receives the transfer of title or ownership of property.  *See* Witkin, Summary 11th Contracts § 727 (2025) ("'Assignment' is a term that may comprehensively cover the transfer of title to any kind of property.").  Put another way, "[a]n assignment is 'a manifestation to another person by the owner of the right indicating his [or her] intention to transfer, without further action or manifestation of intention, the right to such other person, or to a third person.'"  *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 988 (2013) (citing *Cockerell v. Title Ins. & Tr. Co.*, 42 Cal. 2d 284, 291 (1954)).

        Selene takes issue with this definition for two reasons.  First, Selene contends the California Supreme Court's decision in *Cowen* is outdated.  (Dkt. No. 104 at 10 (arguing "Plaintiff cites to a single case decided in 1941 to support" its definition of "assign").)  But Selene fails to articulate the significance of *Cowen*'s issuance date.  As *Cowen* remains good law, the Court is bound to follow it.  *See Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1164 (9th Cir. 1995) ("The district court . . . is bound to follow the considered dicta as well as the holdings of the California Supreme Court when applying California law.").  Moreover, as shown above, the *Cowen* court's definition has since been recited and applied in subsequent—including recent—cases.

        Selene also argues that instead of the California Supreme Court's definition, the Court must look to Black's Law Dictionary, which defines the noun "assignee" as "[s]omeone to whom property rights or powers are transferred by another."  Black's Law Dictionary (12th ed. 2024).  The Court is unpersuaded.  First, Selene does not cite a single case suggesting the noun "assign" has a different and much broader meaning under California law (or any state's law) than "to assign."  Second, the definition Selene urges—that any person who is transferred power is automatically an assign—produces absurd results, as illustrated by the Court's colloquy with Selene during oral argument.  The Court asked Selene about a scenario where an individual hires someone to clean their house.  Selene said under its definition of assign—where "assign" is any transfer of power—the house cleaner would be an assign of the individual who hired them.  Selene further confirmed that if the hiring individual has a contract benefitting their "assigns," the house cleaner would benefit from that contract.  Selene also confirmed that under its definition of

6

"assign," any independent contractor hired to perform a task is an "assign." Selene could identify no case supporting this extreme position, only arguing Black's Law Dictionary requires this result. But Selene provides no authority for the proposition this Court can disregard California Supreme Court authority defining "assign" in favor of a dictionary definition of "assignee." Whereas *Cowen* is binding on this Court, Black's Law Dictionary is not.

## II. WHETHER SELENE IS AN ASSIGN

Selene bears the burden of proving it is an "assign" within the meaning of the Deed of Trust notice-and-cure provision. *See Heritage*, 215 Cal. App. 4th at 988 (citing *Cockerell*, 42 Cal. 2d at 292) ("The burden of proving an assignment falls upon the party asserting rights thereunder."). "An assignment requires very little by way of formalities and is essentially free from substantive restrictions." *Fink*, 210 Cal. App. 4th at 610 (citing *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 1002 (2009)). Generally, "[i]t is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee." *Id.* (citing *Amalgamated*, 46 Cal. 4th at 1002).

As discussed below, Selene fails to meet its burden of proving it is an assign of U.S. Bank/RCF 2.[3] First, the documents Selene relies on as creating the purported assignment do not manifest an intent to transfer servicing rights—they explicitly state otherwise. Second, Selene's conduct is inconsistent with its theory of assignment. And third, U.S. Bank previously executed a document manifesting clear intent to create an assignment, which is absent in the documents purportedly creating an assignment between U.S. Bank and Selene.

### A. Base Servicing Agreement and Limited Power of Attorney

Selene's 30(b)(6) witness testified multiple times "Selene's assignment [was] through the base servicing agreement and the limited power of attorney for this loan." (Dkt. No. 94-4 at 5; *see*, *e.g.*, *id.* at 9-10 ("[QUESTION:] Selene contends that those two documents make it the assign under that paragraph 13 that we just looked at? . . . THE WITNESS: Selene's assignment is

---

[3] In their briefs, the parties refer to the purported assignor as "U.S. Bank" at times, and as "RCF 2" at other times. Neither party argues this distinction is significant for purposes of their motions. The Court thus considers references to "U.S. Bank" and "RCF 2" as interchangeable for purposes of this order.

1  through the servicing agreement and the limited power of attorney.").)  However, neither the Base

2  Servicing Agreement nor the Limited Power of Attorney "manifest[] an intention to make a

3  present transfer of [U.S. Bank's] rights to" Selene.  *See Fink*, 210 Cal. App. 4th at 610.

4  Beginning with the Base Servicing Agreement, it explicitly states the parties' intent *not* to

5  transfer servicing rights to Selene:

> Section 9.10   Intention of the Parties.
>
> It is the intention of the Parties that this Agreement is **only a contract for servicing** the Assets.  Accordingly, the Parties hereby acknowledge that **the Owner remains the sole and absolute owner of the Assets and all rights related thereto (including but not limited to the servicing rights)**.

11  (Dkt. No. 93-1 at 70) (emphases added.)[4]  "In determining whether an assignment has been made,

12  the intention of the parties as manifested in the instrument is controlling."  *California Ins.*

13  *Guarantee*, 203 Cal. App. 4th at 1335 (cleaned up).  Here, the plain and unambiguous language of

14  the Base Servicing Agreement demonstrates the parties' intent *not* to assign servicing rights to

15  Selene: in a section titled "the intention of the parties," the Base Servicing Agreement states U.S.

16  Bank "remains the sole and absolute owner of . . . servicing rights."  (Dkt. No. 93-1 at 70.)  Later,

17  the Base Servicing Agreement provides Selene, "*as an independent contractor*, shall service and

18  administer the Assets."  (Dkt. No. 95-2 at 22 (emphasis added).)  This provision is further

19  evidence the parties did not intend an assignment: rather than referring to Selene as an *assignee*,

20  the Agreement labels Selene an *independent contractor*.  Meanwhile, as Selene's 30(b)(6) witness

21  acknowledged, the Base Servicing Agreement nowhere states Selene is an assign or that the Base

22  Servicing Agreement created an assignment.  (Dkt. No. 94-4 at 27-28 ("[Q]: Is there anything in

23  this 200-page document that says US Bank is assigning -- that word – to Selene? . . . THE

24  WITNESS: Not that I can recall off the top of my head.").)  So, the Base Servicing Agreement

---

[4] Selene moved to seal this section of the Base Servicing Agreement.  As discussed below, Selene fails to provide compelling reasons for sealing this section.  Moreover, Section 9.10 was discussed in open court during oral argument.  So, the Court denies Selene's request to seal Section 9.10.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006) (sealing inappropriate as to information "already publicly available").

does not manifest RCF 2's intention to assign Selene servicing rights.

Nor does the Limited Power of Attorney. The Limited Power of Attorney "appoints Selene Finance LP ('Servicer') . . . aforesaid Attorney-In-Fact . . . to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for" certain enumerated tasks. (Dkt. No. 94-13 at 2.) It says nothing about *assigning* rights to Selene. Moreover, the Limited Power of Attorney refers to the Base Servicing Agreement, which is explicit about not assigning rights to Selene. (*Id.* at 2 ("[T]he documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents *are required or permitted under the terms of the Servicing Agreement*.") (emphasis added).) As Selene's authority under the Limited Power of Attorney is limited by the Base Servicing Agreement, the Limited Power of Attorney cannot assign rights the Base Servicing Agreement does not.

Selene's insistence it nonetheless is an assign of U.S. Bank as a matter of law because it "received a multitude of powers" from U.S. Bank (Dkt. No. 104 at 7), is inconsistent with California law, as explained *supra*. *California Insurance Guarantee Association v. Workers' Compensation Appeals Board.*, 203 Cal. App. 4th 1328 (2012) is instructive on this point. There, medical providers "entered into a 'Collection Agreement' with Pinnacle, pursuant to which Pinnacle was to provide 'exclusive collection services' for accounts 'assigned' to Pinnacle by the 'client' medical provider." *Id.* at 1333-34. The question before the court was whether Pinnacle was "the assignee with legal title to the medical providers' claims." *Id.* at 1336. The court concluded it was not, reasoning "[t]he agreements establish[ed] that the medical providers only transferred to Pinnacle the *task* of collecting their accounts receivable, for a fee. Pinnacle was hired to provide collection *services,* nothing more." *Id.*

While *California Insurance Guarantee* involved an agreement to provide services of a different type, the factual parallels are notable. Just as the *California Insurance Guarantee* agreement "provided that Pinnacle was an independent contractor," 203 Cal. App. 4th at 1334, the Base Servicing Agreement here describes Selene "as an independent contractor." (Dkt. No. 95-2 at 22.) Just as the *California Insurance Guarantee* contract stated "the medical providers remained the 'sole owners' of their accounts, 203 Cal. App. 4th at 1337, the Base Servicing

9

Agreement here states "the Owner [U.S. Bank] remains the sole and absolute owner of the Assets and all rights related thereto (including but not limited to the servicing rights)." (Dkt. No. 93-1 at 70.) Just as the medical providers in *California Insurance Guarantee* "retained the right to terminate their relationships with Pinnacle and pursue collection efforts themselves," 203 Cal. App. 4th at 1336, the Base Servicing Agreement here permits U.S. Bank to terminate the Agreement with cause or "without cause, upon sixty (60) days written notice to the Servicer." (Dkt. No. 93-1 at 61-62.)[5] The Base Servicing Agreement continues that upon termination, "all authority and power of the Servicer under this Agreement . . . shall pass to and be vested in a successor Servicer appointed by the Owner or the Manager." (*Id.*)

In *California Insurance Guarantee,* the above-recited facts supported the court's conclusion the agreements merely "transferred to Pinnacle the *task* of collecting their accounts receivable, for a fee." 203 Cal. App. 4th at 1336. The court reached this conclusion even though the agreements used the words "assign" and "reassign," noting "use of the word 'assign' is not conclusive." *Id.* Here, the Base Servicing Agreement and Limited Power of Attorney say nothing about assigning rights to Selene. Instead, they say U.S. Bank remains the sole owner of the servicing rights with the ability to terminate Selene as an independent contractor. The Court thus concludes—as the *California Insurance Guarantee* court did—"there was no assignment but only a delegation of the task of" servicing the loan to Selene. *Id.* at 27. That is, Selene was not an "assign" but the "Loan Servicer" as the term is separately defined in the Deed of Trust:

> The Note or partial interest in the Note (together with this [Deed of Trust]) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "**Loan Servicer**") that collects Periodic Payments due under the Note and this [Deed of Trust] and performs other mortgage loan servicing obligations under the Note, this [Deed of Trust] and Applicable Law.

(Dkt. No. 94-1 at 11 (emphasis added).)

---

[5] Although Selene seeks to seal this provision, termination of the Base Servicing Agreement was discussed in open court. Further, Selene does not explain why the termination clause should be sealed. So, the Court denies Selene's motion to seal this provision. *See Kamakana*, 447 F.3d at 1184.

### B. Selene's Conduct

Selene's conduct reinforces the conclusion Selene is not an assign. "If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the [property], then an assignment will be held to have taken place." *California Ins. Guarantee*, 203 Cal. App. 4th at 1337 (cleaned up). In this case, Selene's communication with Plaintiff is inconsistent with its present assertion of "assign" status. In September 2022, Selene informed Plaintiff the servicing of his mortgage "[was] transferring from Nationstar Mortgage LLC d/b/a/ Mr. Cooper to Selene." (Dkt. No. 94-14 at 3.) Selene's letter stated this "transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan." (*Id.* at 5.) Had Selene received an assignment as it now asserts, then under Selene's present argument such assignment would "affect [a] term or condition" of the Deed of Trust—it would affect Sections 13 and 20 by requiring Plaintiff to provide notice to Selene as an assign before commencing judicial action against it. Because Selene instead told Plaintiff the terms of his Deed of Trust were unaffected by the transfer, Selene's conduct demonstrates it did not perceive itself as an assign.

### C. Other Documents Involving Plaintiff's Loan

The summary judgment record contains other documents involving Plaintiff's loan that are explicit about their respective assignments. For example, when Plaintiff's deed of trust was assigned to U.S. Bank as owner trustee for RCF 2, the document is called "ASSIGNMENT OF DEED OF TRUST." (Dkt. No. 94-8.) It states:

> "FEDERAL NATIONAL MORTGAGE ASSOCIATION . . . (**ASSIGNOR**), does hereby grant, **assign** and transfer to U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST . . . (**ASSIGNEE**), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

(Dkt. No. 94-8 (emphases added).) Other Deed of Trust assignments involving Plaintiff's loan are similarly explicit, labeling the document "assignment of deed of trust" and clearly identifying the "assignor" and "assignee." (Dkt. Nos. 94-5, 94-6, 94-7.) In contrast, the documents Selene

11

asserts create the assignment—the Base Servicing Agreement and Limited Power of Attorney—are not titled "assignments," do not label U.S. Bank and Selene as "assignor" and "assignee," and do not state U.S. Bank is assigning any rights to Selene.

As Selene observes, "there are no prescribed formalities that must be observed to make an effective assignment." *Fink*, 210 Cal. App. 4th at 610 (cleaned up). But the lack of formality does not relieve Selene from its "burden of proving an assignment," *Heritage*, 215 Cal. App. 4th at 988, nor does it relax the requirement that the assignor "manifest[] an intention to make a present transfer of his rights to the assignee." *Fink*, 210 Cal. App. 4th at 610 (cleaned up). The prior assignments demonstrate how entities, including U.S. Bank, manifested intent to assign rights involving Plaintiff's loan. In contrast, the Base Servicing Agreement and Limited Power of Attorney contain no similar expressions of intent.

*\*\*\**

In sum, Selene has not met its burden of establishing it is an "assign" pursuant to Plaintiff's Deed of Trust. Meanwhile, Plaintiff "produce[d] evidence negating an essential element of" Selene's defense. *See Nissan Fire*, 210 F.3d at 1102. To prevail on this issue, Selene must establish U.S. Bank "manifested an intention to make a present transfer of [its] rights to [Selene]." *Fink*, 210 Cal. App. 4th at 610 (citing *Amalgamated Transit*, 46 Cal. 4th at 1002). Plaintiff produced evidence establishing as a matter of law U.S. Bank did not manifest such intention: the Base Servicing Agreement states U.S. Bank "remains the sole and absolute owner of . . . servicing rights." (Dkt. No. 93-1 at 70.) Selene's authority to execute documents under Limited Power of Attorney is constrained by the Base Servicing Agreement. Neither the Base Servicing Agreement nor the Limited Power of Attorney describe an assignment of rights to Selene—which stands in stark contrast to other documents assigning Plaintiff's Deed of Trust, which manifest a clear intent to assign rights. On this record, every reasonable juror would conclude U.S. Bank did not manifest an intent to assign its servicing rights to Selene.[6] *See*

---

[6] Because the Court did not consider the declaration, report, or testimony of Charles A. Hansen in concluding Selene is not an assign as a matter of law, the Court declines to rule on Selene's requests to strike the Hansen declaration and report. (Dkt. No. 104 at 26; Dkt. No. 110 at 6.) As to Plaintiff's request to disregard Selene's declaration at Docket No. 95-1 as self-serving legal

*Heritage*, 215 Cal. App. 4th at 1002 (concluding there was no triable issue of fact as to whether the claim had been assigned).

### III. SELENE'S CASES AND ARGUMENTS

The cases Selene cites do not persuade the Court it is an assign, or even that there is a question of fact as to whether it is an assign. As in its motion to dismiss, Selene cites *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017), an unpublished Ninth Circuit decision involving a Deed of Trust with the same language about "benefit[ing] the successors and assigns of the Lender." The Ninth Circuit concluded the plaintiffs were required to notify Ocwen, the loan servicer, before suing it because the lender had assigned Ocwen servicing rights:

> Although Ocwen is not the "Lender" as defined in the Deed of Trust, it is an assign. Per the record, OneWestBank assigned the servicing rights on the [plaintiffs'] mortgage to Ocwen: "[Ocwen] and [OneWestBank] desire to set forth the terms and conditions pursuant to which [OneWestBank] will sell, transfer and assign, to [Ocwen], all of [OneWestBank's] right, title and interest in and to such Mortgage Servicing Rights."

*Id.*

In its order denying Selene's motion to dismiss, the Court concluded *Giotta* was distinguishable because here, "[u]nlike *Giotta*, . . . there is no evidence in the record of an assignment from the lender to Defendant." (Dkt. No. 66 at 7-8.) This point of distinction remains. In *Giotta*, the record included a document stating the owner "will sell, transfer and *assign* . . . all of [its] right, title and interest in and to such Mortgage Servicing Rights." 706 F. App'x at 422 (emphasis added). On its motion for partial summary judgment, Selene fails to produce a similar document or any document establishing U.S. Bank assigned Selene servicing rights.

Notably, the district court decision in *Giotta* reveals another point of distinction. In *Giotta*, the record included a loan modification provision stating "Borrower acknowledges that 'Lender' is

---

assertions, the Court disregards the paragraphs concluding there was an assignment. For example, the Court disregards the statement that "RCF 2 Trust assigned Selene the servicing of the Loan." (Dkt. No. 95-1 ¶ 13.) Such self-serving legal conclusions do not create genuine disputes of material fact. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("[A] self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence.").

13

the legal holder and the owner, *or agent/servicer* for the legal holder and owner, of the Note and Security Instrument." *Giotta v. Ocwen Fin. Corp.*, No. 15-CV-00620-BLF, 2016 WL 4447150, at *3 (N.D. Cal. Aug. 24, 2016). The district court agreed with the defendants "[t]he Loan Modification could not be clearer that the term 'Lender' includes the 'servicer.'" *Id.* at *3. In this case, in contrast, Selene did not produce a document demonstrating that "Lender" in Plaintiff's Deed of Trust includes the loan servicer.

Because *Giotta* is distinguishable, the district court decisions applying *Giotta* are unpersuasive. For example, *Smith v. Flagstar Bank, FSB*, No. C 18-02350 WHA, 2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) involved an identical notice-and-cure provision. The district court cited *Giotta* as establishing "the Loan Servicer is an assignee of the Lender with respect to the collection of the loan payments and is therefore entitled to relief under Section 20." *Id* at *4. In light of *Giotta*, the district court saw "no alternative but to" grant the defendant loan servicer's motion to dismiss. *Id.* Here, having concluded *Giotta* is distinguishable, the Court is not required to apply *Giotta's* holding.

Selene also cites *Wilde v. Flagstar Bank FSB*, No. 18-CV-1370-LAB (BGS), 2019 WL 1099841 (S.D. Cal. Mar. 8, 2019), which involved an identical notice-and-cure provision. But in *Wilde*, "[t]he parties . . . seem[ed] to agree that Flagstar, the loan servicer, [was] covered by the terms of the Deed of Trust, even though the document speaks only to the '[b]orrower' and '[l]ender.'" *Id.* at *1. Because the *Wilde* court had no reason to consider whether an assignment was made, its conclusion on this point is not persuasive.

Selene also cites *Milam v. Selene Finance, LP*, No. 24 C 317, 2024 WL 3455027 (N.D. Ill. July 18, 2024) in support of its argument. In denying Selene's motion to dismiss, the Court stated Selene's reliance in *Milam* was unpersuasive because there, "the court applied Illinois law to determine the defendant was an assignee as a matter of law." (Dkt. No. 66 at 8.) In the present summary judgment briefing, Selene again cites *Milam* while again failing to explain why *Milam* and the other non-California cases it cites are persuasive despite agreeing California law governs this case.

Selene also relies on *Builders' Control Service of Northern California, Inc. v. North*

14

1    *American Title Guaranty Co.*, 205 Cal. App. 2d 68, 71 (1962) to argue California recognizes the

2    validity of "assignments for collection." (Dkt. No. 95 at 18.)  Plaintiff does not dispute this

3    proposition.  Instead, Plaintiff argues—and the Court agrees—there is no evidence of an

4    assignment in this case. *Builders' Control* is thus inapplicable because there, the court considered

5    "*two unmistakable assignments* of choses in action." *Id.* at 76 (emphasis added).

6        Finally, Selene argues Plaintiff's interpretation of the Deed of Trust "makes the word

7    'successors' superfluous" in Section 13. (Dkt. No. 104 at 11; *see also* Dkt. No. 94-1 at 10

8    (Section 13 of the Deed of Trust stating "[t]he covenants and agreements of this Security

9    Instrument shall bind . . . and benefit the successors and assigns of Lender").)  Selene argues "[i]f

10   'assign' were limited to that entity that is currently the owner of the Deed of Trust, there would be

11   no need to separately include 'successor,' much less in the plural (i.e., successors), in Section 13."

12   (Dkt. No. 104 at 11.)  The Court sees no superfluity in this case.  As happened in *Giotta*, an owner

13   can assign servicing rights to a loan servicer.  In such instance, under the *Giotta* court's

14   conclusion, the Deed of Trust provisions benefit the loan servicer as the assign and could also

15   benefit a successor to the owner of the Deed of Trust.

16                                    **SEALING**

17       Plaintiff filed an administrative motion to consider whether the Base Servicing Agreement,

18   which Selene designated as confidential, should be sealed. (Dkt. No. 93.)  Selene moves to keep

19   the document under seal. (Dkt. No. 99.)  The Court GRANTS in part and DENIES in part

20   Selene's motion.

21       There is a right of public access to judicial records and documents. *Nixon v. Warner*

22   *Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  In considering motions to seal, courts recognize "a

23   strong presumption in favor of access is the starting point." *Kamakana v. City & Cnty. of*

24   *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up).  When a party seeks to seal judicial

25   records relating to motions that are "more than tangentially related to the underlying cause of

26   action," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016), the party bears

27   the burden of overcoming the presumption with "compelling reasons supported by specific factual

28   findings that outweigh the general history of access and the public policies favoring disclosure,

such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (cleaned up).  Compelling reasons exist if the documents at issue are "sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety*, 809 F.3d at 1097 (citation omitted); *Nixon*, 435 U.S. at 598.

        Here, Selene offers compelling justifications for sealing parts of the Base Servicing Agreement.  For example, Selene's Senior Corporate Appearance Representative attests the Agreement "contains provisions . . . that describe the compensation structure for services provided by Selene," disclosure of which "will result in irreparable harm to Selene's business by allowing its competitors to gain an unfair advantage in the market." (Dkt. No. 99-2 ¶¶ 10-11.)  The Senior Corporate Appearance Representative also attests the Agreement contains provisions "related to the proprietary protocols and servicing procedures used by Selene for servicing mortgage loans," the disclosure of which will cause Selene to "lose a competitive advantage in the industry as its trade secrets would be readily available to the public."  (*Id.* ¶ 12.)  But compelling reasons to seal portions of the Agreement cannot justify sealing nearly the entire Agreement, as Selene seeks to do here.  Nor can the signatories' designation of the agreement as confidential by itself satisfy the "compelling reasons" standard.  (*Id.* ¶ 8 (attesting the Agreement "contains confidentiality provisions under Section 3.22 whereby the parties have agreed not to disclose the content of the Servicing agreement unless required to do so by law").)

        Because Selene has not provided any, let alone compelling, reasons for sealing sections 8.01 (Termination for Cause), 8.02 (Termination without Cause), and 9.10 (Intention of the Parties) of the Base Servicing Agreement, the Court DENIES the motion to seal these provisions.  The Court otherwise GRANTS Selene's request to seal the Base Servicing Agreement in accordance with Docket No. 99.

## CONCLUSION

        For the reasons stated above, Court GRANTS Plaintiff's motion for partial summary judgment and DENIES Selene's.  The Court sets a further case management conference for November 5, 2025.  A joint statement is due one week in advance.

//

This Order disposes of Docket Nos. 93, 94, 95, and 99.

**IT IS SO ORDERED.**

Dated: September 10, 2025

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States District Judge

17